## SOUTHERN CARTRIDGE CO. v. O'BRIEN.
### (No. 9094.)

Court of Civil Appeals of Texas. Galveston.
Feb. 23, 1928.

Rehearing Denied March 29, 1928.

Work and labor ⬾28(4)—Finding that reasonable value of services of expert accountant and bookkeeper from March 1st to April 12th was $240 held sustained.

In action to recover for reasonable value of services for a period from March 1st to April 12th, evidence to effect that plaintiff had devoted most of his time to company's books and was an expert accountant and bookkeeper *held* sufficient to sustain finding that reasonable value of services for such period was $240.

Appeal from Harris County Court; Ray Scruggs, Judge.

---

⬾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by S. W. O'Brien against the Southern Cartridge Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Fulbright, Crooker & Freeman and M. C. Chiles, all of Houston, for appellant.

Fogle & Gentry and C. S. Gentry, all of Houston, for appellee.

GRAVES, J. While under the disposition to be made of the appeal no opinion is required of this court in this cause, for the guidance of counsel the general ground upon which its judgment is based may be thus stated:

The judgment below, pursuant to a jury's verdict upon special issues, awarded the appellee a recovery of $315, with interest at the rate of 6 per cent. per annum from and after January 1, 1925, as for the reasonable value of his services to it for the period from March 1 to April 12, 1924.

While there are other incidental and subsidiary questions discussed in the briefs of the parties, it is apparently conceded by appellant that, if there is sufficient evidence in the record to support the jury's finding, under special issue No. 4, that the reasonable value of appellee's services for the stated period was $240, the judgment should be affirmed; after careful examination of the statement of facts, we conclude that there was such supporting evidence.

The appellee himself testified without contradiction that throughout the given period, while the company was in a sense inactive during that time, he kept a complete record of its labor accounts, of all its receipts and disbursements, the labor accounts being turned in to him on a time sheet every day, which were kept by him on a file on his desk; that he only entered these items on the books when the company had money with which to pay the accounts, but that he also kept a record of all costs of production upon printed blanks he had made for that purpose, and further as follows:

"At any time during the period of 8 weeks from February 22 to April 22, 1924, I could have, within two hours, from the written date which I had on hand in the office of the Southern Cartridge Company, made up a complete statement showing the financial condition of the company. I did not keep the books up to date during this time because I had been instructed by Mr. Fulbright to devote my time to trying to keep the creditors of the company satisfied, and I devoted the most of my time to that work. I used my own car in doing this work. I paid for my own gasoline and spent all of my time every working day during the 8 weeks at this work. I went to see a great many people, including the Magnolia Paper Company, Houston Oil Terminal Company, Peden Iron & Steel Company, Wessendorf, Brazelton & Nelms, Heitman Hardware Company, R. G. Dunn & Co., and others. It has been so long since that time that I do not remember all the people I went to see. I remember that Mr. Fulbright asked me to see John Meany, a lawyer, about some labor accounts. Several of the employees of the Southern Cartridge Company, who had not been paid, had employed Mr. Meany to collect their claims, and he had prepared the papers to file suit on these claims. I explained to him that we were making arrangements to get a loan to take care of these claims. Mr. Sherman and I went to the State National Bank, when Mr. Fulbright was out of town, and negotiated a loan for $1,500 during this period of 8 weeks. On another occasion Mr. Sherman and I arranged with Mr. Cage of the Gulf State Bank for a loan from his bank. I do not remember what the amount of this loan was. It was made as an advance on sales which had already been made by the Southern Cartridge Company. During this period of 8 weeks I also wrote a great many letters to the creditors of the company, at my home at night. I carried copies of these letters to the office of the Southern Cartridge Company and placed them in the files as I wrote them."

He further testified that he had been an expert accountant and bookkeeper for 15 or 16 years, during which time he had been in association with many other accountants and bookkeepers and knew the business, as well as what such services were worth, adding the following:

"I know what the reasonable value of the services of an expert accountant and bookkeeper, *such as I have testified that I performed for the Southern Cartridge Company from February 22, 1924, to April 12, 1924,* was at the time I performed them. The reasonable value of such *services* at that time was $70 per week."

We think this testimony alone was sufficient to support the recovery here; it will be noted that, after first stating that Mr. Fulbright, the president of the company, instructed him to devote his time during the period involved to trying to pacify the company's creditors, he detailed the services he rendered in that respect, and there is nothing anywhere in the record to indicate that as such they were not properly classified as being in the circumstances such services as an expert accountant and bookkeeper should render. There is nothing to the contrary either upon whether or not such services did come under the duties of an expert accountant and bookkeeper in his situation, or as to whether or not their reasonable value was what he put them at. In a situation of this sort the jury could not be properly said to have known as much about such matters as he did.

It is deemed unnecessary to discuss the other questions raised, as we think the trial court's judgment should be affirmed under the conclusions stated; that order will be entered.

Affirmed.